UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

STRIKE 3 HOLDINGS, LLC,

 *Plaintiff,*            Case No.: 18-cv-00571-EAW

 - vs. -

JOHN DOE subscriber assigned IP address
69.204.6.161,

 *Defendant.*

---

## MEMORANDUM OF LAW IN SUPPORT OF
## JOHN DOE DEFENDANT'S MOTION TO QUASH SUBPOENA
## AND/OR VACATE DECISION AND ORDER TO SERVE RULE 45 SUBPOENA

**THE LAW OFFICE OF PARKER R. MACKAY**
*Counsel for Defendant John Doe*
 By: PARKER R. MacKAY, ESQ.
3110 Delaware Avenue
Kenmore, NY 14217
Ph: (716) 803-8166
Fx: (716) 408-1651
Em: Parker@MacKayLawOffice.com

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ................................................................................................................... 3

  I. The Subpoena Should Be Quashed And/Or
     The Court's August 28th Order Vacated ............................................................... 3

    A.   Legal Standards................................................................................................ 3

    B. Defendant Has Standing To Quash The Third-Party
       Subpoena, And Production of Identifying Information
       Constitutes An Undue Burden ....................................................................... 4

    C. The Complaint Fails To State A Claim, And Other
       Courts Have Quashed Identical Subpoenas From This
       Same Plaintiff On This Basis......................................................................... 5

    D. The Requested Information Will Not Advance
       Plaintiff's Claim Because Defendant Did Not Live
       At The Subject Address At The Relevant Time, An
       IP Address Cannot Sufficiently Identify An Infringer,
       And No Basis Exists For Secondary "Subscriber" Liability ................................. 7

    E. The Court's August 28th Decision And Order
       Should Be Vacated Upon A Determination That
       Plaintiff's Lawsuit Is An Improper Work-Around To The DMCA...................... 10

  II. The Court Should Allow Defendant To Proceed
      Anonymously If It Does Not Quash The Subpoena ................................................ 12

CONCLUSION................................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**
*AF Holdings, LLC v. Doe*, No. 12–CV–2049, 2012 WL 3835102 (N.D. Cal. Sep. 5, 2012) ......... 8
*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ...................................................... 7
*Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999) ...................................... 5
*Devils Films, Inc. v. Nectar Video*, 29 F. Supp. 2d 174 (S.D.N.Y. 1998) ...................................... 7
*Hard Drive Prods., Inc., v. Does 1-188*, 809 F. Supp. 2d 1150 (N.D. Cal. 2011) ........................ 3
*In Re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80 (E.D.N.Y.) ............... 3
*Malibu Media, LLC v. Doe*, No. 15 CIV. 4369 (AKH),
　2015 WL 4092417 (S.D.N.Y. July 6, 2015) ....................................................................... 1, 8
*Malibu Media, LLC v. Does 1-25*, No. 12-362,
　2012 WL 2367555 (S.D. Cal. June 21, 2012) ........................................................................ 3
*Malibu Media, LLC v. John Does 1-10*, No. 2:12-CV-3623-ODW,
　2012 WL 5382304 (C.D. Cal. June 27, 2012) ...................................................................... 12
*Malibu Media, LLC v. John Does 1-30*, No. 2:12-cv-13312 (E.D. Mich. Sep. 30, 2013) ............ 12
*Next Phase Distribution, Inc. v. John Does 1-27*, 284 F.R.D. 165 (S.D.N.Y. 2012) ................. 6, 7
*Patrick Collins, Inc. v. Doe 1*, 288 F.R.D. 233 (E.D.N.Y. 2012) ........................................ 8, 9, 13
*Patrick Collins, Inc. v. Does 1-26*, 843 F. Supp. 2d 565 (E.D. Pa. 2011) ...................................... 6
*Patrick Collins, Inc. v. Does 1-79*, No. 12-cv-10532 (D. Mass. Nov. 7, 2012) ............................. 8
*Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120 (2d Cir. 2014) ................................................ 6
*Recording Industry Ass'n of America v. Verizon Internet Service Inc.*, 351 F.3d 1229
　(D.C. Cir. 2003) ................................................................................................................... 11
*Strike 3 Holdings, LLC v. Doe*, No. 17-CV-9659 (VEC),
　2018 WL 2371730 (S.D.N.Y. May 23, 2018) ........................................................................ 3
*Strike 3 Holdings, LLC v. John Doe assigned IP address 108.46.43.152*,
　No. 17 Civ. 8956 (AHK) (S.D.N.Y. Mar. 8, 2018) ................................................................ 5
*Strike 3 Holdings, LLC v. John Doe*, No. 18-cv-768 (D. Minn. Apr. 14, 2018) .......................... 10

**Statutes**
17 U.S.C. § 512(h)(2) ................................................................................................................. 12
47 U.S.C. § 551(c) ........................................................................................................................ 3

**Rules**
Fed. R. Civ. P. 45(d)(3) ............................................................................................................ 3, 5
Fed. R. Civ. P. 60(b)(6) ............................................................................................................ 4, 5

# PRELIMINARY STATEMENT

Defendant is before the Court because s/he received notice from Charter Communications (the recent successor to Spectrum/Time Warner Cable, hereinafter "Spectrum") that his/her true name and address will be produced pursuant to a third-party internet service provider ("ISP") subpoena allowed by this Court's August 28, 2018 Decision and Order. ECF No. 10 (the "August 28th Order"). Defendant moves here to accomplish several objectives: (1) quash the subpoena commanding Spectrum to provide Plaintiff with the true name and address of Defendant assigned IP address 69.204.6.161 as directed by the August 28th Order, and (2) vacate the August 28th Order permitting service of the subpoena in the first place.

As set forth herein, and as already held by other district courts in the Second Circuit, Plaintiff's form complaint used around the country in myriad filings encompassing more than thirty-one (31) pages of PACER searches fails to contain sufficient factual matter to state a claim for relief that is plausible on its face. Alternatively, while case law across the country has varied on motions to quash John Doe third-party ISP subpoenas (even with this same plaintiff), several courts have grown increasingly intolerant of the pre-service mass subpoena techniques utilized by so-called "copyright trolls"[1] like Plaintiff and have begun to deny *ex parte* motions to serve third-party subpoenas in the first place on the basis that they fail to meet the "good cause" standard. Specifically as concerns Defendant, the information Spectrum will produce pursuant to the Rule 45 subpoena cannot advance Plaintiff's claim because Defendant did not reside at the

---

[1] "Copyright trolls" are "roughly defined as plaintiffs who are 'more focused on the business of litigation than on selling a product or service or licensing their [copyrights] to third parties to sell a product or service.' " *Malibu Media, LLC v. Doe*, No. 15 CIV. 4369 (AKH), 2015 WL 4092417, at *2 (S.D.N.Y. July 6, 2015) (citing Matthew Sag, *Copyright Trolling, An Empirical Study*, 100 Iowa L.Rev. 1105, 1108 (2015)).

address during any point in time relevant to Plaintiff's complaint; indeed, s/he did not even begin to occupy the address until a month after the last alleged infringement. Apart from that specific fact, no secondary "subscriber" liability exists generally for copyright infringement, and courts have begun to deny early discovery on the increasingly-accepted notion that a subscriber's IP address alone is not reasonably likely to lead to identification of an actual infringer. All of these bases provide sufficient grounds for this Court to quash the subpoena, if not vacate its prior decision and order allowing service of the third-party subpoena.

Finally, it has been reasoned – and affirmed – that the Digital Millennium Copyright Act's ("DMCA") clerk-of-the-court subpoena process is being circumvented to accomplish discovery by use of limited judicial resources, and that, while the DMCA's provisions do not strictly govern the type of information Plaintiff seeks and do not otherwise prohibit pre-service subpoena practice, where demonstrated abusive litigants like Plaintiff have no real intention of litigating cases (as evidenced by myriad federal PACER dockets showing cases quickly closed by voluntary dismissal after several months), such pre-service discovery should not be permitted. Defendant urges this Court to adopt the same reasoning.

In the event the Court declines to grant Defendant's motion(s), Defendant requests continued anonymity through the litigation and suggests use of an *ex parte* mechanism that other district courts have approved to provide information directly to the Court. Undersigned counsel will accept service of process, should that become necessary, but Defendant's true name and address could be provided directly to the Court for disclosure or use at a later point in the litigation, if required.

# ARGUMENT

I. **The Subpoena Should Be Quashed And/Or The Court's August 28th Order Vacated**

   A. **Legal Standards**

A court may quash or modify a subpoena. FED. R. CIV. P. 45(d)(3). A defendant typically lacks standing to quash a third-party subpoena on the basis of Rule 45(d)(3)(A)(iii)'s "undue burden" ground, *see*, *e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 17-CV-9659 (VEC), 2018 WL 2371730, at *2 (S.D.N.Y. May 23, 2018), but where the subpoena implicates a party's privacy interests, however minimal, standing may be granted. *See*, *e.g.*, *In Re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 89 (E.D.N.Y.), *report and recommendation adopted sub nom. Patrick Collins, Inc. v. Doe 1*, 288 F.R.D. 233 (E.D.N.Y. 2012) ("Thus, this Court cannot conclude with any reasonable certainty that plaintiffs have overcome the expectation of privacy by putative defendants."); *Malibu Media, LLC v. Does 1-25*, No. 12-362, 2012 WL 2367555, *2 (S.D. Cal. June 21, 2012) (declining to deny motion to quash on lack of standing); *Hard Drive Prods., Inc., v. Does 1-188*, 809 F. Supp. 2d 1150 (N.D. Cal. 2011) (granting Doe's motion to quash). The Cable Franchise Policy and Communications Act, 47 U.S.C. § 551(c), protects an internet subscriber's personally identifiable information from disclosure by a cable operator and thus embodies a privacy interest. *See also* H.R. Rep. 98-934 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4655 at *79 ("The Congress is recognizing a right of privacy in personally identifying information collected and held by a cable company . . .").

Apart from a motion to quash, with the increasing flood of copyright troll litigation, courts appear to have alternatively vacated orders granting leave to serve early discovery – or simply denied them *sua sponte* prior to objection by a subscriber-defendant – on the ground that early discovery under Rule 26 is premised upon a "good cause" standard and/or an ability to

survive a motion to dismiss. Because Rule 60 contains a broad catch-all provision permitting the vacating of an order for "any other reason that justifies relief," FED. R. CIV. P. 60(b)(6), an order permitting service of a third-party subpoena can alternatively be addressed by this mechanism.

### B. Defendant Has Standing To Quash The Third-Party Subpoena, And Production of Identifying Information Constitutes An Undue Burden

The cases cited above, all of which arise in a BitTorrent context, recognize a defendant-movant's privacy interest in their identifying information sufficient to permit standing to quash a subpoena directed at a third-party ISP. The privacy interest here is no different, as embodied by the Communications Act's prohibition on disclosure of subscriber identity. Above and beyond that blanket protection, courts have been keen to recognize that copyright litigation in the pornography context invokes concerns about public embarrassment or coercion, which appears to implicitly counsel toward a finding of a privacy right sufficient to permit standing. For these reasons, Defendant has standing, even if minimal, to move to quash the subpoena served upon Spectrum.

As set forth in further detail in this brief, (1) the subpoena is unlikely to reveal information reasonably likely to advance Plaintiff's claim in any fashion, and (2) the complaint itself fails to state a claim and is an improper work-around to a statutory mechanism that does not contemplate BitTorrent architecture. Coupled with this plaintiff's demonstrated history of mass litigation and a sue-and-withdraw business model, production of Defendant's personal identifying information in the face of such concerns constitutes an undue burden inasmuch as it forces Defendant to expend resources defending a lawsuit that Plaintiff has no intention of actually litigating. Accordingly, the third-party subpoena should be quashed on this ground.

### C. The Complaint Fails To State A Claim, And Other Courts Have Quashed Identical Subpoenas From This Same Plaintiff On This Basis

Some courts tasked with considering third-party ISP subpoenas have quashed these subpoenas on the ground that the underlying complaints fail to state copyright infringement claims. Although this ground does not fit neatly into Rule 45's provisions for quashing a subpoena, *see* FED. R. CIV. P. 45(d)(3)(A), the reasoning appears to follow from the underlying notion that early discovery under Rule 26 must be premised upon a showing that a plaintiff's complaint will withstand a motion to dismiss. *See Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 579 (N.D. Cal. 1999). Accordingly, while the Court reviewed the complaint in issuing its August 28, 2018 Decision and Order, the Federal Rules grant a court wide latitude to revisit that decision and vacate its prior order in the context of quashing the subpoena. *See* FED. R. CIV. P. 60(b)(6).

As an example, Southern District of New York Judge Alvin Hellerstein quashed an identical subpoena from this same plaintiff earlier this year on the basis that the complaint failed to state copyright claim(s). *See Strike 3 Holdings, LLC v. John Doe assigned IP address 108.46.43.152*, No. 17 Civ. 8956 (AHK), Dkt. No. 15 (S.D.N.Y. Mar. 8, 2018). The complaint and accompanying exhibit in the Southern District case are in virtually identical form, and Judge Hellerstein's decision explains why the complaint there lacks sufficient information to state a claim. And to be sure, Judge Hellerstein's decision followed his initial order to grant the plaintiff's motion for leave to serve a third-party subpoena in the first place. *See id.*, Dkt. No. 9.

Similarly applied here, the complaint fails to set forth sufficient information to identify what specific copyright works Defendant allegedly infringed upon. The second left-most column of Exhibit A lists "hash" numbers that, as alleged in the complaint, correlate in some manner to digital files exchanged through torrent programs, and, thus, do not identify, for lay

purposes, the name of any corresponding file. *See* complaint, Exhibit A. To make matters more confusing, the complaint alleges that there is a difference between "piece hash" and "file hash" inasmuch as the first correlates to a piece of a file rather than the entire file, *compare* complaint ¶ 21 *with complaint* ¶ 22, but Exhibit A refers only to a "hash." The right-most column of Exhibit A, on the other hand, lists "CRO numbers" that correlate to a registration number with the United States Copyright Office. *See* complaint, Exhibit A. And here, unlike in Judge Hellerstein's case, no AO-121 forms are even docketed from which a defendant could reference the "title of the work."

Furthermore, Plaintiff alleges, without specific denomination, that some of the allegedly-infringed works' copyrights are pending. *See* complaint ¶ 32. The Second Circuit, unlike other circuits, is unsettled as to whether assertion of a submitted application alone permits a valid copyright infringement claim. *See Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 125 (2d Cir. 2014). However, where the issue is unsettled and the competing concern is expenditure of scarce judicial resources, courts have not hesitated to find pending status insufficient. *See*, *e.g.*, *Patrick Collins, Inc. v. Does 1-26*, 843 F. Supp. 2d 565, 568 (E.D. Pa. 2011) ("In other words, the Copyright Office has neither registered nor refused to register Collins' work. [. . .] Therefore, Plaintiff has not met § 411(a)'s registration requirement, and so has not concretely stated a *prima facie* claim of copyright infringement. As such, we see no good cause to permit Plaintiff to subpoena twenty-six (26) John Doe Defendants' ISPs to compel the ISPs to reveal the Defendants' identifying personal information."). This Court should hold likewise.

Finally on this point, the failure to identify the allegedly infringed works raises yet another problem: pornography is not categorically protected by copyright law. *See Next Phase Distribution, Inc. v. John Does 1-27*, 284 F.R.D. 165, 171 (S.D.N.Y. 2012). While Plaintiff

professes in its filings to produce films "famous for redefining adult content, creating high-end artistic, and performer-inspiring motion pictures produced with a Hollywood style budget and quality," complaint ¶ 3, an International Movie Database (a/k/a "IMDB") search reveals some of the production's titles to be: "Young and Beautiful Intern Sodomized By Her Boss," "Petite Blonde Barely Takes Massive Black C---," "Honestly I Love Anal," and "Anal With My Boss!" – those being some of the less lewd and shocking titles. Without benefit of the allegedly-infringed works' identification, it is impossible to assess whether a valid copyright claim even lies based on the specific subject matter. Although courts often find the question of obscenity to be a fact-specific inquiry counseling against summary judgment, preliminary relief has been denied on the ground that material is obscene. *See generally Devils Films, Inc. v. Nectar Video*, 29 F. Supp. 2d 174 (S.D.N.Y. 1998); *see also Next Phase Distribution, Inc.*, 284 F.R.D. at 171 (recognizing that obscenity question counsels against expenditure of judicial resources "in a copyright infringement case when the copyright itself might be deemed invalid"). Thus, this presents yet another basis from which to find Plaintiff's allegations insufficient to state a claim.

### D. The Requested Information Will Not Advance Plaintiff's Claim Because Defendant Did Not Live At The Subject Address At The Relevant Time, An IP Address Cannot Sufficiently Identify An Infringer, And No Basis Exists For Secondary "Subscriber" Liability

In evaluating third-party ISP subpoenas, the Second Circuit instructs courts to consider, *inter alia*, whether the subpoenaed information will advance a plaintiff's claims. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010). As set forth in the accompanying declaration,[2] Defendant did not reside at the address Spectrum will produce pursuant to the

---

[2] The information on this issue contained in counsel's declaration is necessarily based on hearsay in an attempt to anonymize Defendant's identity. Should the Court consider this issue

subpoena either (1) on the exact date the subpoena calls for – March 18, 2018 at about 6:01 Universal Coordinated Time, or (2) during any relevant time frame alleged in the complaint. In fact, Defendant did not move to that address until mid-April 2018. MacKay Decl. ¶¶ 4-5. It is unclear why Spectrum associates Defendant's name with the specific IP address and physical address at the requested time(s), but the fact remains that Defendant was not residing at the relevant address during the relevant time frame.

Production of Defendant's name and address here cannot advance Plaintiff's claim in any fashion because no secondary "subscriber" liability exists for copyright infringement. Indeed, some judges taking up the issue have directly stated that attempts to do so would not pass muster under Rule 11. *See Patrick Collins, Inc. v. Does 1-79*, No. 12-cv-10532, Dkt No. 51, n.3 (D. Mass. Nov. 7, 2012) (Sorokin, *M.J.*); *see also AF Holdings, LLC v. Doe*, No. 12–CV–2049, 2012 WL 3835102, at *3 (N.D. Cal. Sep. 5, 2012) ("AF Holdings has not articulated any basis for imposing on Hatfield a legal duty to prevent the infringement of AF Holdings' copyrighted works [by securing his wireless network], and the court is aware of none."). Thus, Defendant's association with an address at which s/he did not reside cannot serve to impute liability to him or her.

More fundamental than whether secondary liability exists, courts are increasingly wary that an IP address itself sufficiently identifies actual defendant-infringers on even a *prima facie* level. *See*, *e.g.*, *Malibu Media, LLC v. Doe*, No. 15 CIV. 4369 (AKH), 2015 WL 4092417, at *4 (S.D.N.Y. July 6, 2015); *Patrick Collins, Inc. v. Doe 1*, 288 F.R.D. 233, 237 (E.D.N.Y. 2012). Pointing to the proliferation of wireless routers and unsecured networks, the ability to easily hack

---

dispositive but require allegations upon personal knowledge, Defendant stands ready to submit filings under seal or by any mechanism deemed appropriate.

wireless internet, and the ability of multiple computers to simultaneously use the same internet account, Southern District of New York Judge Arthur Spatt, adopting prior persuasive reasoning in that court, held that a mass copyright plaintiff simply could not "establish a reasonable likelihood that the discovery requested [in a third-party subpoena for ISP identifying information] would lead to the identity of the Defendants who could be sued." *Id*. at 239. The exact same concern applies even more pointedly here where Defendant did not reside at the address to be divulged during the relevant timeframe, and, in counsel's review of myriad filings around the country, nowhere has this plaintiff ever articulated how discovery would be propounded to bridge the gap from subscriber to infringer.

In response, copyright plaintiffs often misapply criminal search warrant law to argue that activity associated with a subscriber's IP address sufficiently supports suspicion that the subscriber was the person responsible for copyright infringement. However, in IP address search warrant cases, probable cause is relevant to a search warrant's ultimate use in discovering physical evidence at a physical location – i.e. that a person "possessed" child pornography on a computer under their control that may be seized and examined, for instance. That is not the case here, and the standards and concerns of criminal law are simply unfitting for civil copyright infringement claims based on exchange of files where this plaintiff does not allege that Defendant stores or maintains a copy of any allegedly infringed material. *See generally* complaint; *cf. Patrick Collins, Inc.*, 288 F.R.D. at 238 ("The legal questions encountered while prosecuting cyber-criminals involve different standards and factors than the ones at issue. The comparison between the two is entirely inapposite."). Accordingly, the Court should vacate the August 28, 2018 Decision and Order and quash the subpoena on the basis that Plaintiff cannot show information sought in the subpoena will advance its claim in any fashion.

**E. The Court's August 28th Decision And Order Should Be Vacated Upon A Determination That Plaintiff's Lawsuit Is An Improper Work-Around To The DMCA**

The Court's August 28, 2018 Decision and Order followed an *ex parte* motion for leave to serve a third-party subpoena. ECF Nos. 5, 10. This specific case appears to among the first batch of cases filed by this plaintiff in this district – and, thus, presumably, the first opportunity for this Court to consider this plaintiff's specific positions, all without adversarial briefing. However, this same plaintiff has a history across federal districts of filing numerous lawsuits through different attorneys, many of which are voluntarily discontinued several months after filing. To the degree these lawsuits are merely vehicles to discover subscriber identity – as opposed to litigating toward binding judgements against the actual infringers – at least one court has recognized that this process circumvents the statutorily-created subpoena mechanism from the DMCA, which does not apply to the facts of BitTorrent litigation.

In the District of Minnesota, Magistrate Judge Franklin Noel pointed to the DMCA provision allowing copyright owners to apply to the federal district court clerk for a subpoena upon ISPs to identify an alleged infringer. *Strike 3 Holdings, LLC v. John Doe*, No. 18-cv-768, Dkt No. 14, at *3 (D. Minn. Apr. 14, 2018) (citing 17 U.S.C. § 512(h)), *aff'd* Dkt. No. 19 (Jul. 30, 2018) (Doty, *J.*). He conceded, like other courts to address the issue, that where (as here), the ISP was acting as a conduit between two internet users, that specific provision was unavailable for relief. *See id*. However, he viewed the plaintiff's *ex parte* motion for leave to serve expedited discovery as an attempted work-around that (1) conflicted with the privacy provisions of the Communications Act, 47 U.S.C. § 551(c), and (2) improperly usurped congressional intent in the DMCA, which had been the product of significant stakeholders, to craft the remedies to address changing internet architecture. Quoting from a D.C. Circuit case

underlying precedent in the Eighth Circuit, he stated, "it is the province of Congress, not the courts, to decide whether to rewrite DMCA 'in order to make it fit a new and unforeseen internet architecture.' " *Recording Industry Ass'n of America v. Verizon Internet Service Inc.*, 351 F.3d 1229, 1238 (D.C. Cir. 2003), *cert denied*, 125 S. Ct. 347 (2004).

Courts that have ruled otherwise, while competently basing their decisions on existing legal principles, respectfully fail to see the larger picture at work with so-called copyright trolls, and how such litigants' practice, in fact, works. While such decisions often recite the need for a plaintiff to discover subscriber information to proceed with litigation, that reasoning is based upon the underlying notion that a plaintiff will, in fact, proceed with litigation. While Plaintiff takes pains to profess it is not in the business of mass litigation, s*ee* ECF No. 5-1 (Lansky Decl. ¶¶ 27-31), its documented track record around the country is one of mass filing for statutory damages alone and discontinuance shortly after – nowhere apparently has Plaintiff ever sued on the theory that it suffers actual harm. Further, of the sample of cases reviewed across various federal district courts, this plaintiff has never pursued cases further than district court review of a magistrate's denial of their motion for leave to serve a subpoena or quash a subpoena. At bottom, the self-serving statement that Plaintiff professes not to send demand letters or attempt to contact a defendant prior to service of a complaint, *id*. ¶ 30, implicitly highlights its views on the judiciary's role in its business model: merely to discover identity so that it may shake down a subscriber (as opposed to an actual infringer) after the judiciary has been freed from the process.

That being said, Plaintiff's filings are simply attempts to expeditiously discover what it cannot by statutory design and changing technology. The DMCA's clerk-of-the-court subpoena process was designed to provide an expedient mechanism to discover subscriber identity without the use of a lawsuit, instead requiring only a filed "request" in the form of a sworn declaration.

17 U.S.C. § 512(h)(2). The possibility of a lawsuit exists on the back end should the copyright owner seek to actually "protect[] rights," 17 U.S.C. § 512(h)(2)(C), but Plaintiff has instead, through its filings, front-loaded the lawsuit at the expense of defendant and judicial resources to accomplish the same discovery. It therefore stands to reason where this plaintiff has no real intention of litigating, litigation should not be used to circumvent a process designed to provide aggrieved copyright owners with tools to address infringement that merely has not been updated to reflect changing technology.

Courts at early stages of copyright troll litigation have refused to allow their resources to be used for sue-and-settle schemes, recognizing this process for what it has become. *See*, *e.g.*, *Malibu Media, LLC v. John Does 1-30*, No. 2:12-cv-13312, Dkt. No. 70, at 12-13 (E.D. Mich. Sep. 30, 2013) ("But, as the Plaintiff's record clearly shows, the judicial machinery is not being used with the purpose of litigating its claims, but merely to identify the Does' identities in an inexpensive fashion and then pursue private settlement."); *Malibu Media, LLC v. John Does 1-10*, No. 2:12-CV-3623-ODW, 2012 WL 5382304, at *4 (C.D. Cal. June 27, 2012) ("The federal courts are not cogs in a plaintiff's copyright-enforcement business model. The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to trial."). This Court should adopt the same reasoning and vacate its August 28, 2018 Decision and Order on this basis.

**II.    The Court Should Allow Defendant To Proceed Anonymously If It Does Not Quash The Subpoena**

Should the Court not quash the subpoena, it should nevertheless continue to allow Defendant to proceed litigating anonymously. The Court has already recognized the concerns

with the subject matter of this litigation, which are sufficiently embodied in the August 28th Decision and Order.

If the issue is merely service of a complaint, *see* ECF No. 10 at 4, undersigned counsel will accept service should that become necessary. On the other hand, though, given the concerns that other courts have recognized with so-called copyright trolls, an available remedy, coupled with attorney acceptance of the complaint, would be to order Spectrum to provide information directly to the Court, *ex parte* and under seal. *See*, *e.g.*, *Patrick Collins, Inc. v. Doe 1*, 288 F.R.D. 233, 236 (E.D.N.Y. 2012).

## **CONCLUSION**

For the reasons set forth above, this Court should (1) quash the Rule 45 subpoena commanding Spectrum to provide Plaintiff with the true name and address of Defendant assigned IP address 69.204.6.161 as directed by this Court's August 28, 2018 Decision and Order, and (2) vacate its August 28, 2018 Decision and Order. Should the Court deny this motion, it should nevertheless permit Defendant to litigate anonymously.

Dated: October 8, 2018
      Kenmore, New York                   Respectfully submitted,

                                                      s/Parker R. MacKay

                                        **THE LAW OFFICE OF PARKER R. MACKAY**
                                        *Counsel for Defendant John Doe*
                                          By: PARKER R. MacKAY, ESQ.
                                          3110 Delaware Avenue
                                          Kenmore, NY 14217
                                          Ph: (716) 803-8166
                                          Fx: (716) 408-1651
                                          Em: Parker@MacKayLawOffice.com